## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
IN RE $6,871,042.36,  AND ACCRUED          )
INTEREST, IN FUNDS FORMERLY HELD           )
IN ACCOUNT NUMBER *******07,               )
AT MTB BANK IN NEW JERSEY,                 )          Misc. Case No. 14-1222  (RBW)
CURRENTLY ON DEPOSIT IN AN ACCOUNT         )
CONTROLLED BY THE UNITED STATES            )
DISTRICT COURT FOR THE                     )
SOUTHERN DISRICT OF NEW YORK               )
_____)

## MEMORANDUM OPINION

On December 18, 2014, this Court issued a Protective Order, pursuant to 28 U.S.C. § 2647 (2012), restraining approximately $6.8 million formerly held in account number *******07, at MTB Bank in New Jersey ("the Venus Account Funds"), and consisting of funds that are the subject of a parallel interpleader action currently pending before this Court. See Protective Order at 5; United States v. Barry Fischer Law Firm, LLC, No. 15-116. Eleanor Fisher and Tammy Fu, the Liquidators of Trade and Commerce Bank ("the Liquidators"), have now brought this Motion to Intervene and Dissolve the Protective Order, and Request for a Hearing. Motion of Trade and Commerce Bank, By and Through its Court-Appointed Liquidators, to Intervene and Dissolve the Protective Order, and Request for a Hearing ("Liquidators' Mot.") at 1–2. After carefully considering the Liquidators' motion, and all memoranda of law relating to that motion,[1] the Court concludes for the following reasons that it

---

[1] In addition to the Liquidators' motion, the Court considered the following documents in rendering its decision: (1) the Trade and Commerce Bank's Memorandum of Law in Support of Motion to Intervene and Dissolve Protective Order, and Request for Hearing ("Liquidators' Mem."); (2) the United States' Opposition to Liquidators' Motion to Intervene and Dissolve the Protective Order ("Gov't Opp'n"); and (3) the Trade and Commerce Bank's Reply Memorandum of Law in Further Support of Motion to Intervene and Dissolve Protective Order, and Request for Hearing ("Liquidators' Reply Mem.").

must grant the motion to intervene, deny the motion to dissolve the protective order, and deny the request for a hearing.

## I.      BACKGROUND

The Venus Account Funds are the subject of a complex span of litigation. Kesten Development Corporation ("Kesten"), a British Virgin Islands corporation, is the named owner of the MTD bank account that previously held the Venus Account Funds, which have been restrained in one form or another since 2005. See United States v. Federative Republic of Brazil, 748 F.3d 86, 88–89 (2d Cir. 2014).

## A.      Prior Venus Account Funds Litigation Pursuant to 28 U.S.C. § 2467

In December 2004, a Brazilian court issued a warrant to seize the Venus Account Funds pursuant to an investigation into a "Kesten principal . . . and his associates for money laundering, tax evasion, fraud, and other financial crimes violative of Brazilian penal law." Id. at 89. Brazil "sought assistance from the United States in executing its seizure warrants pursuant to the nations' mutual legal assistance treaty," id., and § 2467, which authorizes United States district courts to enforce a "foreign forfeiture or confiscation judgment," § 2467(c)(1). The United States filed an action with another member of this Court seeking "a temporary restraining order on the [Venus Account] Funds," which was granted on January 26, 2005. Federative Republic of Brazil, 748 F.3d at 89. The Court vacated its restraining order on September 22, 2010, in light of the District of Columbia Circuit's decision in In re Any and All Funds or Other Assets in Brown Bros. Harriman & Co. Account # 8870792 in the Name of Tiger Eye Invs. Ltd. ("Tiger Eye"), 613 F.3d 1122 (D.C. Cir. 2010). Federative Republic of Brazil, 748 F.3d at 89. In Tiger Eye, the Circuit held that § 2467 only permitted "the issuance of temporary restraining orders only after a foreign court has entered a forfeiture judgment." Id. (quotation marks omitted) (quoting

Tiger Eye, 613 F.3d at 1124).  Because the Brazilian court had only issued a seizure warrant against the Venus Account Funds, but had not yet entered a forfeiture judgment, the restraining order issued by this Court could not be maintained.  Id. at 90.

## B.     Liquidators' Litigation Against Kesten

In August 2010, the Liquidators filed suit against Kesten in the British Virgin Islands, alleging that Trade and Commerce Bank's directors had attempted to launder money through Kesten.  Id.  When Kesten failed to make an appearance in that case, the British Virgin Islands court entered a default judgment against Kesten in the amount of $15,936,369.  Id.  Thereafter, the Liquidators filed suit against Kesten in the Bankruptcy Court for the Southern District of New York to domesticate the British Virgin Islands default judgment.  Id.  After Kesten failed to make an appearance in the bankruptcy case in New York, the Bankruptcy Court entered a default judgment in the full amount in favor of the Liquidators on October 26, 2010.  Id.

## C.     The Interpleader Litigation and the Brazilian Forfeiture Judgment

On October 20, 2010, the United States filed an interpleader action in the Southern District of New York to resolve the competing claims for the Venus Account Funds.  Id.  The United States named the Liquidators and Brazil, among others, as interpleader defendants.  See Complaint in Interpleader ¶ 8, 9, United States v. Barry Fischer Law Firm, No. 15-116, ECF No. 1.

In February 17, 2012, the Sixth Specialized Federal Court of São Paulo, Brazil ("São Paulo Court") convicted the Kesten principal who had been under investigation for fraudulent mismanagement of a financial institution and ordered the Venus Account Funds forfeited as proceeds of the fraudulent scheme.  Federative Republic of Brazil, 748 F.3d at 90.  The United States represents that two other people were also convicted in the Brazilian prosecution, see Ex

Parte App. at 11; United States' Reply to Liquidators' Status Report on Interpleader Action and Request for Omnibus Hearing on all Pending Matters at 4, <u>United States v. Barry Fischer Law Firm</u>, No. 15-116, ECF No. 176 ("U.S. Status Report"), but in any event, both sides filed appeals with the Supreme Court of Brazil on March 22, 2016. U. S. Status Report at 4–5. The appeals remain unresolved and according to the United States, "[i]n no appeal was the Brazilian forfeiture of the [Venus Account Funds] set aside." <u>Id.</u>

As a result of the 2012 Brazilian forfeiture judgment, the Southern District of New York granted Brazil's summary judgment motion in the interpleader action, recognized its superior title to the Venus Account Funds, and ordered the United States to transfer the funds to the São Paulo Court. <u>See</u> <u>United States v. Barry Fischer Law Firm, LLC</u>, No. 10-7997, 2012 WL 5259214, *6–7 (S.D.N.Y. 2012). The Second Circuit, however, vacated the District Court's award of summary judgment, concluding that "the penal law rule did not permit the district court to grant summary judgment in favor of Brazil based on a criminal forfeiture judgment in the absence of a § 2467 petition by the Attorney General."[2] <u>Federative Republic of Brazil</u>, 748 F.3d at 91. Consequently, the Second Circuit remanded the case to the district court on March 24, 2014, "with instructions that [the district court] afford Brazil and the Attorney General a reasonable amount of time to file a § 2467 enforcement action." <u>Id.</u> at 97. On August 21, 2014, the Southern District of New York issued an order requiring that "[a]ny enforcement action must

---

[2] The penal law rule is a common law rule that prevents United States courts from executing another country's penal laws. <u>Federative Republic of Brazil</u>, 748 F.3d at 92–93. The Second Circuit concluded that because Brazil's claim to the Venus Account Funds was based on the Brazilian forfeiture judgment, the district court's grant of summary judgment in favor of Brazil amounted to the United States enforcing Brazil's penal laws, which is prohibited by the penal law rule. <u>Id.</u> at 93. The Second Circuit, however, held that § 2467 constituted a valid statutory exception to the penal law rule, "insofar as it permits the Attorney General of the United States, in his [or her] sole discretion, to petition district courts to enforce the forfeiture judgments or confiscation orders of qualifying foreign nations." <u>Id.</u> at 96.

be filed not later than Monday, November 3, 2014." See Order, United States v. Barry Fischer Law Firm, No. 15-116, ECF No. 131.

### D.     The Protective Order Litigation and Transfer of the Interpleader Action

On May 29, 2014, Brazil submitted to the United States a renewed request for mutual legal assistance, seeking enforcement of the 2004 Brazilian seizure warrant against the Venus Account Funds. Protective Order App. at 4. Upon the Attorney General's certification of the Brazilian seizure warrant pursuant to § 2467(d)(3) and 18 U.S.C. § 983(j), the United States submitted an ex parte application for a protective order in this case on November 3, 2014, requesting that the Court register and enforce the 2004 Brazilian seizure warrant against the Venus Account Funds pending the conclusion of the criminal appeal proceedings in Brazil.[3] United States' Ex Parte Application to Enforce and Register a Foreign Restraining Order Pursuant to 28 U.S.C. § 2467(d)(3) ("Protective Order App.") at 1. On December 18, 2014, this Court granted the United States' application and issued the Protective Order. Protective Order at 5.

On January 14, 2015, the Southern District of New York sua sponte transferred the interpleader action to this Court to "promote efficiency by consolidating all claims to the subject assets before the same judge." Order at 4, Barry Fischer Law Firm, No 15-116, ECF No. 158. On March 9, 2015, the Liquidators filed their Motion to Intervene and Dissolve the Protective Order and a Request for a Hearing. Liquidators' Mot. at 1–2.

---

[3] The United States requested a "protective order," as opposed to a "restraining order," because the Venus Account Funds "are currently on deposit [ ] in the Southern District of New York," and the United States declined to "ask a D.C. judge to issue a[] restraining order against another federal judge." Liquidators' Mem., Exhibit ("Ex.") 3 (Hearing Transcript dated November 7, 2014, United States v. Barry Fischer Law Firm, LLC, No. 15-116 ("November 7, 2014 Hearing")) at 31.

## II.     STANDARDS OF REVIEW

### A.     Motion to Intervene

The Liquidators seek to intervene as a matter of right in this matter pursuant to Federal

Rule of Civil Procedure 24(a), or, in the alternative, permissively pursuant to Rule 24(b).

Liquidators' Mot. at 1–2; Liquidators' Mem. at 16 n.38. Rule 24(a) provides that "[o]n timely

motion," a court must allow a party to intervene if it claims an interest relating to the property or

transaction that is the subject of the action, and is so situated that disposing of the action may as

a practical matter impair or impede the movant's ability to protect its interest, unless existing

parties adequately represent that interest. Fed. R. Civ. P. 24(a); see also Fund for Animals, Inc.

v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003) (citation omitted). A party seeking to intervene as

of right must additionally establish standing under Article III of the Constitution. Id. at 731–32.

Pursuant to Rule 24(b), "[o]n timely motion," a court may permit a party to intervene if it

"has a claim or defense that shares with the main action a common question of law or fact." Fed.

R. Civ. P. 24(b)(1). In determining whether permissive intervention is appropriate, a court "must

consider whether the intervention will unduly delay or prejudice the adjudication of the original

parties' rights." Fed. R. Civ. P. 24(b)(3). Permissive intervention is "inherently discretionary,"

EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998), and a court may deny

a motion for permissive intervention even if the movant has met all of the requirements of Rule

24(b), id. at 1048.

### B.     Motion to Dissolve the Protective Order

The Liquidators also seek to dissolve the Protective Order issued by this Court. A federal

court may issue a protective order pursuant to § 2467 "[t]o preserve the availability of property

subject to civil or criminal forfeiture under foreign law." § 2467(d)(3)(A)(i). A protective order

is appropriate "when the United States has a treaty or other formal international agreement in effect providing for mutual forfeiture assistance," id. § 2467(a)(1), and when the property subject to the order represents the suspected proceeds of a "violation of foreign law that would constitute a violation or an offense for which property could be forfeited under Federal law if the offense were committed in the United States," id. § 2467(a)(2)(A).

Judicial review of an application for a § 2467 protective order requires the Court to consider "two sets of procedural prerequisites." Gang Luan v. United States, 722 F.3d 388, 392 (D.C. Cir. 2013) (citation omitted). First, the Court must ensure that none of the following conditions regarding the foreign judgment are present: (1) "the [foreign] judgment was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process of law"; (2) "the foreign court lacked jurisdiction over the subject matter"; or (3) "the judgment was obtained by fraud." See id. (citing § 2467(d)(3)(A)(ii)(I)); see also In re Seizure of Approximately $12,116,153.16 & Accrued Interest in U.S. Currency, 903 F. Supp. 2d 19, 30 (D.D.C. 2012) (summarizing § 2467's requirements). Second, the Court must ensure that the protective order comports with "the procedural due process protections for a restraining order under section 983(j) of title 18." § 2467(d)(3)(A) (ii)(I). As noted by the District of Columbia Circuit,

> [t]hat section authorizes three different kinds of restraining orders against property subject to civil forfeiture under U.S. civil forfeiture statutes. First, a federal court may issue a restraining order that lasts during the pendency of forfeiture proceedings, upon the filing of a civil forfeiture complaint alleging that the property with respect to which the order is sought is subject to civil forfeiture. Second, a court may issue a 90–day restraining order prior to the filing of a civil forfeiture complaint after conducting an adversarial proceeding akin to a preliminary injunction hearing. Third, a court may issue a temporary restraining order of not more than 14 days without notice or hearing if there is probable cause to believe that the property is subject to forfeiture and that notice would jeopardize its availability.

Gang Luan, 722 F.3d at 393 (quoting § 983(j)).

### III.   LEGAL ANALYSIS

#### A.   Standing to Intervene

The first issue the Court must address is whether the Liquidators satisfy the standing requirement to intervene in this proceeding.[4]  In order to establish Article III standing, "[a] prospective intervenor . . . must show: (1) injury-in-fact, (2) causation, and (3) redressability." Fund for Animals, Inc., 322 F.3d at 732–33 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized[] and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan, 504 U.S. at 560 (citations omitted).  Additionally, a prospective intervenor must demonstrate a "causal connection between the injury and the conduct complained of," such that the injury is "trace[able] to the challenged action, . . . and not . . . th[e] result [of] the independent action of some third party not before the court." Id.  Lastly, the plaintiff must show a likelihood that "the injury will be 'redressed by a favorable decision.'"  Id. at 561 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41–42 (1976)).

The Liquidators assert that their "valid judgment for $15.9 million that was issued by the United States Bankruptcy Court for the Southern District of New York on October 26, 2010" against Kesten, the nominal owner of the bank account where the Venus Account Funds were deposited before they were initially seized in 2005, as well as the Liquidators' participation in the parallel interpleader action, provides a basis for their injury-in-fact, e.g., their inability to

---

[4] The Liquidators assert in a footnote in their reply that the "D.C. Circuit has altogether questioned the logic of an Article III standing inquiry in the intervention context." Liquidators' Reply Mem. at 4 n.1 (citing Roeder v. Islamic Republic of Iran, 333 F.3d 228, 233 (D.C. Cir. 2003)).  The District of Columbia Circuit, however, has characterized its language in Roeder regarding standing as "dicta," and reiterated that "[i]t is therefore circuit law that intervenors must demonstrate Article III standing." Deutsche Bank Nat'l Trust Co. v. Fed. Deposit Ins. Co., 717 F.3d 189, 193 (D.C. Cir. 2013).

continue to litigate those interests in the interpleader litigation.   Liquidators' Reply Mem. at 5.
The Liquidators argue that the United States "unquestionably conferred a distinct, 'legally
protectable' interest upon [the Liquidators] by initiating the interpleader action and naming [the
Liquidators] as a defendant." Id. On the other hand, the United States disputes that the
Liquidators have a "concrete and imminent injury because the Liquidators have not demonstrated
an incontrovertible interest in the restrained funds." Gov't Opp'n at 8. Although the United
States acknowledges that the Liquidators have an unsecured judgment against Kesten, it
contends that "failing to obtain a judgment lien against specific assets that [are] subject to
forfeiture . . . is fatal to standing to contest those assets under U.S. law." Id. at 8–9.  The
Liquidators reply that the United States "is attempting to imply Brazilian forfeiture law by
analogy" in its assertion that the Liquidators' failure to obtain a judgment lien is fatal to their
position that they have standing, and that application of such foreign law would violate the penal
law rule. Liquidators' Reply Mem. at 3–4.

 The Court concludes that the Liquidators have demonstrated their injury-in-fact.  As
noted above, to establish injury-in-fact, the Liquidators must demonstrate that their interest in the
Venus Account Funds "faces an imminent, threatened intervention—i.e., one that is not
conjectural or speculative." Deutsche Bank Nat'l Trust Co. v. Fed. Deposit Ins. Co., 717 F.3d
189, 193 (D.C. Cir. 2013).  The Court agrees with the Liquidators that the United States
conceded that the Liquidators have an interest in the Venus Account Funds when the United
States interpleaded the Liquidators in the collateral interpleader action. See Complaint in
Interpleader ¶ 8 (naming the Liquidators as interpleader defendants), United States v. Barry
Fischer Law Firm, No. 15-116, ECF No. 1. The Liquidators' ability to establish its right to the
Venus Account Funds is clearly impacted by the interpleader action, which has been stayed due

to the Court's issuance of the Protective Order.  See Order, United States v. Barry Fischer Law

Firm, No. 15-116, ECF No. 131 (Aug. 21, 2014); cf. CC Distribs., Inc. v. United States, 883 F.2d

146, 150 (D.C. Cir. 1989) (stating that a party "suffers a constitutionally cognizable injury by the

loss of an opportunity to pursue a benefit . . . even though the [party] may not be able to show

that it was certain to receive that benefit had it been accorded the lost opportunity").

The cases cited by the United States in support of their proposition that the Liquidators

cannot establish standing because they do not have a recorded judgment lien against the Venus

Account Funds are distinguishable because the parties in those cases were asserting standing in

the forfeiture actions themselves; they were not asserting standing in the context of a motion to

intervene, nor was there a collateral interpleader action to resolve competing claims regarding

the forfeited funds.  See United States v. 133 U.S. Postal Serv. Money Orders, 780 F. Supp. 2d

1084 (D. Haw. 2011); United States v. Real Property Located at 229 Potter Road, 2015 WL

778830 (D. Conn. 2015); United States v. Dempsey, 55 F. Supp. 2d 990 (E.D. Mo. 1998); United

States v. Gutierrez, 2012 WL 3291976 (S.D. Fla. 2012); United States v. Madoff, 2012 WL

1142292 (S.D.N.Y. 2012); United States v. Lin Hu, 2011 WL 5884918 (E.D.N.Y. 2011); United

States v. Butera, 2006 WL 2632384 (S.D. Miss. 2006); United States v. McCorkle, 143 F. Supp.

2d 1311 (M.D. Fla. 2001); United States v. Fuchs, 2005 WL 440429 (N.D. Tex. 2005); United

States v. One-Six Share of James J. Bulger in All Present & Future Proceeds of Mass Millions

Lottery Ticket No. M2462333, 326 F.3d 36 (1st Cir. 2003).

Next, the Liquidators claim that their injury was caused by the United States' filing its

§ 2467 action with the Court because the Court's issuance of the Protective Order "forestall[s]

the promised equitable adjudication of [their] interest in the interpleader [action]," and the

"dissolution of the [Protective] Order would redress [the Liquidators'] concrete and imminent

injury by allowing the interpleader action to proceed." Liquidators' Reply Mem. at 6. The

United States responds that the Liquidators have failed to demonstrate that the United States'

enforcement action caused the Liquidators' alleged injury because the Venus Account Funds do

not legally belong to Kesten. Gov't Opp'n at 10. The United States also argues that dissolving

the Protective Order as the Liquidators request will not redress the Liquidators' alleged harm

because the dissolution would not automatically entitle the Liquidators to ownership of the

Venus Account Funds. Id. at 11.

       The Court agrees that the Liquidators sustained an injury caused by the United States'

decision to seek a Protective Order to restrain the Venus Account Funds because the Protective

Order has placed on hold the resolution of the Liquidators' claim to the Venus Account Funds in

the collateral interpleader action. See Order dated February 18, 2015, United States v. Barry

Fischer Law Firm, No. 15-116, ECF No. 167 (staying the interpleader action pursuant to the

Court's Protective Order issued in this case). The United States filed the Application for a

Protective Order in an effort to comply with the Southern District of New York's November 3,

2014 deadline for the filing of any § 2467 enforcement action in the interpleader action. See

Order, United States v. Barry Fischer Law Firm, No. 15-116, ECF No. 131 (Aug. 21, 2014);

Def.'s Mem., Ex. 3 (November 7, 2014 Hearing) at 14 (counsel for the United States stating that

it "followed that deadline" by filing the Ex Parte Application on November 3, 2014 in this

Court). In its most recent status report in the interpleader action, the United States agreed that its

filing the § 2467 action with the Court "has, more or less, mooted this [i]nterpleader action," and

stated that the Venus Account Funds "are now tied-up in related legal proceedings before this

Court and the ultimate ownership of the [Venus Account Funds] must be decided in these related

proceedings." United States' Reply to Liquidators' Status Report on Interpleader Action and

Request for Omnibus Hearing on all Pending Matters at 2, <u>United States v. Barry Fischer Law Firm</u>, No. 15-116, ECF No. 176.  Consequently, the Liquidators' injury—its inability to litigate its interest in the Venus Account Funds in the interpleader action—would be redressed by a decision in their favor dissolving the Protective Order, because such dissolution would allow the interpleader action to proceed.  The United States' arguments regarding causation and redressability mistakenly identify the Liquidators' injury as the <u>deprivation of their alleged legal right to the Venus Account Funds</u>, and argue correctly that the Liquidators have not yet established their legal right to those funds.  <u>See</u> Gov't Opp'n at 10–11.  The Liquidators' injury, however, is their <u>inability to proceed in the interpleader action to resolve the ownership of the Venus Account Funds</u> due to the Protective Order, and thus it is irrelevant for purposes of the standing analysis whether or not the Liquidators' claim in the Venus Account Funds in the interpleader action will ultimately be successful.  Liquidators' Reply Mem. at 6.

To summarize, the Liquidators have a legally cognizable interest in adjudicating their right to the Venus Account Funds, and this interest was injured when the interpleader action was stayed.  The United States caused this injury by initiating the current § 2467 action and requesting the Protective Order, because the interpleader action was stayed pursuant to the Protective Order.  The dissolution of the Protective Order, as the Liquidators request, would redress the Liquidators' injury because the interpleader litigation would then proceed.  Consequently, the Liquidators have demonstrated that they have standing to intervene.

## B.      Intervention as of Right

As stated above, when assessing a motion to intervene as of right under Rule 24(a), a court must consider the motion's timeliness, whether the movant "claims an interest relating to the property or transaction which is the subject of the action," whether the movant "is so situated

that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest," and whether the movant's interest "is adequately represented" by the existing parties to the litigation. Fund for Animals, Inc., 322 F.3d at 731 (citation omitted). In its opposition, the United States does not contest the timeliness or adequate representation factors, and thus the Court concludes that the United States has conceded the Liquidators' satisfaction of these two factors. See Gov't Opp'n at 7–14; see also Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (Walton, J.) ("It is well understood in this Circuit that when a [non-moving party] files an opposition to a dispositive motion and addresses only certain arguments raised by the [moving party], a court may treat those arguments that the [non-moving party] failed to address as conceded." (citations omitted)), aff'd 98 F. App'x 8 (D.C. Cir. 2004). Moreover, "because [the Liquidators] ha[ve] suffered a cognizable injury sufficient to establish Article III standing, [t]he[y] also ha[ve] the requisite interest under Rule 24(a)(2)." Jones v. Prince George's Cty., Md., 348 F.3d 1014, 1018-19 (D.C. Cir. 2003); see also Fund for Animals, 322 F.3d at 735.

The Court further finds that this action threatens to impair the Liquidators' interest in the resolution of its claim to the Venus Account Funds. "In determining whether an applicant's interests will be impaired, courts in this circuit look to the 'practical consequences' that the applicant may suffer if intervention is denied." Forest Cty. Potawatomi Comm. v. United States, __ F.R.D. __, __, 2016 WL 1465324 (D.D.C. 2016) (quoting Nat. Res. Def. Council v. Costle, 561 F.2d 904, 909 (D.C.Cir.1977)). As concluded above, the Liquidators' interest in resolving the interpleader action is impaired because the Court has stayed the interpleader action pursuant to the Protective Order requested by the United States. See Order dated February 18, 2015, United States v. Barry Fischer Law Firm, No. 15-116, ECF No. 167 (staying the interpleader

action pursuant to the Court's Protective Order issued in this case). Accordingly, because the Liquidators have established their Article III standing and satisfied the four factors set forth in Rule 24(a), the Liquidators are entitled to intervene in this action as of right.[5]

## C.     Motion to Dissolve Protective Order

28 U.S.C. § 2467(d), entitled "Entry and enforcement of judgment," provides, in relevant part:

(1) In general. —The district court shall enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation unless the court finds that—

(A) the judgment was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process of law;

(B) the foreign court lacked personal jurisdiction over the defendant;

(C) the foreign court lacked jurisdiction over the subject matter;

(D) the foreign nation did not take steps, in accordance with the principles of due process, to give notice of the proceedings to a person with an interest in the property of the proceedings in sufficient time to enable him or her to defend; or

(E) the judgment was obtained by fraud.

\*\*\*

(3) Preservation of property.—

(A) Restraining orders.—

(i) In general.—To preserve the availability of property subject to civil or criminal forfeiture under foreign law, the Government may apply for, and the court may issue, a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation.

(ii) Procedures.—

---

[5] Because the Court concludes that the Liquidators may intervene as of right under Rule 24(a), it need not consider whether the issue of permissive intervention under Rule 24(b) is appropriate. Fund for Animals, 322 F.3d at 731.

> (I) In general.— A restraining order under this subparagraph shall be issued in a manner consistent with . . . the procedural due process protections for a restraining order under section 983(j) of title 18.
>
> ***
>
> (C) Limit on grounds for objection.—No person may object to a restraining order under subparagraph (A) on any ground that is the subject of parallel litigation involving the same property that is pending in a foreign court.

§ 2467(d).  Section 2467 also provides that "[i]n entering orders to enforce the judgment, the court shall be bound by the findings of fact to the extent that they are stated in the foreign forfeiture or confiscation judgment." Id. § 2467(e).  The Liquidators assert three arguments regarding why the Protective Order issued in this case should be dissolved, which are discussed in turn below.

### 1.  Purpose of the Protective Order

First, the Liquidators argue that the Protective Order should be dissolved because maintaining the Protective Order serves no purpose.  According to the Liquidators, their right to the Venus Account Funds is superior to that of Brazil under the "first in time" rule,[6] and that this right will not be disturbed even if the United States ultimately obtains enforcement of the 2012 Brazilian forfeiture judgment through a subsequent § 2467 proceeding.  Liquidators' Mem. at 16–18.  The United States responds that the Liquidators do not have a superior right to the Venus Account Funds and, in any event, § 2467 "does not create independent subject matter jurisdiction

---

[6] See United States v. McDermott, 507 U.S. 447, 449 ("Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" (citations omitted)).

for a U.S. court to determine the validity of the Liquidators' or any other third-party's property interest in the restrained funds." Gov't Opp'n at 14.

The Court agrees with the United States that it would not be appropriate to dissolve the Protective Order in this case on the basis of the Liquidators' alleged superior right to the Venus Account Funds. The ownership of the Venus Account Funds is the precise issue to be resolved in the parallel interpleader action, and § 2467(e) states that the Court is "bound by the findings of fact" of the foreign judgment. Therefore, it would be inappropriate to litigate the competing claims to the Venus Account funds within the context of the current § 2467 enforcement action. See Federative Republic of Brazil, 748 F.3d at 96 (noting that "§ 2467 ensures that the executive alone will weigh the foreign affairs implications of any enforcement action," and that the statute "cabins the judiciary's enforcement discretion by directing that district courts 'shall' grant enforcement of a foreign judgment unless jurisdiction or due process concerns are evident").

### 2. Second Circuit's Instructions

Next, the Liquidators contend that the Protective Order should be dissolved because the doctrine of judicial estoppel prevented the United States from initially seeking a protective order upon the Second Circuit's remand of the case. Liquidators' Mem. at 18. Specifically, the Liquidators argue that the Second Circuit's decision permitted the United States to seek enforcement of a final forfeiture judgment under § 2467(d)(1), but not a restraining order to preserve the availability of property under § 2467(d)(3). Liquidators' Mem. at 18–21. The United States responds that the Second Circuit's directions to the district court on remand in the interpleader action allowed Brazil to "make a § 2467 request to the Attorney General," but that "[n]owhere in the Second Circuit opinion, no matter how close one reads it, does the Second Circuit imply that Brazil's request can only be an application for the enforcement of the actual

forfeiture judgment obtained in 2012," as opposed to an application for a protective order. Gov't Opp'n at 2 n.1.

The Second Circuit held in the interpleader action that, although the penal law rule prohibiting enforcement of another nation's penal laws "require[d] [it] to vacate the district court's award of summary judgment in favor of Brazil," Federative Republic of Brazil, 748 F.3d at 95, § 2467 "establish[ed] a statutory exception to the penal law rule for foreign judgments falling within its terms," id. at 96. The Second Circuit continued:

> At oral argument, counsel for Brazil represented that, if this court were to vacate the award of summary judgment in its favor based on the penal law rule, it would promptly petition the United States to initiate a § 2467 proceeding. There is no reason to doubt the representation; Brazil petitioned for § 2467 assistance with respect to the Venus Account in 2005, and has done so in other proceedings. Thus, we remand this case to the district court with instructions that it afford Brazil a reasonable period of time to request and the Attorney General a reasonable period of time to file a § 2467 enforcement action. If Brazil fails, or if the Attorney General declines, to do so, the district court shall then determine, in light of our decision today, whether any interpleader party is entitled to the funds seized from the Venus Account.

Id. at 96–97 (emphasis added) (citations omitted). In the conclusion of its opinion, the Second Circuit stated: "Title 28 U.S.C. § 2467 creates a statutory exception to the penal law rule insofar as it permits the Attorney General of the United States, in his [or her] sole discretion, to petition district courts to enforce the forfeiture judgments or confiscation orders of qualifying foreign nations." Id. at 97. This language makes clear that the Second Circuit did not limit the United States' options on remand to enforcement of a final forfeiture judgment only. The court used the terms "proceeding" and "enforcement action" in the preceding text to describe the avenues the United States could pursue on remand and referenced both final forfeiture judgments as well as confiscation orders as means it could employ to preserve the subject property; it did not specify that the United States' only option was to seek enforcement of a final forfeiture judgment under

§ 2467(d)(1).  See Federative Republic of Brazil, 748 F.3d at 96–97.  Thus the United States was

not judicially estopped by the Second Circuit from filing its Protective Order Application with

the Court pursuant to § 2467(d)(3), and the United States' petition for a protective order under

§ 2467(d)(3) was appropriate § 2467 assistance it could seek in the absence of a final judgment

in the Brazilian criminal proceedings.

### 3.  Due Process in Brazilian Forfeiture Proceedings

Finally, the Liquidators claim that the Court lacked subject matter jurisdiction to enter the

Protective Order in this case because the Liquidators were not permitted to intervene in the

underlying forfeiture proceedings in Brazil, and thus those proceedings lacked due process in

violation of § 2467(d)(3)(A)(ii)(I).  Liquidators' Mem. at 21.  The United States responds that

§ 2467(d)(3)(C) prohibits the Liquidators from objecting to the Protective Order because they

"should first be required to submit their claims to the relevant court in Brazil with jurisdiction

over the restrained funds.  This was not done and should not be permitted in the [s]ection 2467

enforcement action."  Gov't Opp'n at 13.  Moreover, the United States argues that the

"Liquidators claim that they had no legal standing in Brazil, but provide no legal basis for that

conclusion."  Id. at 14.

The Court agrees that § 2467(d)(3)(C) bars the Liquidators from objecting to the

Protective Order issued in this case.  This provision prohibits any party from objecting to a

protective order "on any ground that is the subject of parallel litigation involving the same

property that is pending in a foreign court."  28 U.S.C. § 2467(d)(3)(C).  The provision was

intended to

> prevent[] a litigant from taking "two bites at the apple" by raising objections to the
> basis for the forfeiture in the Federal court that he also raised, or is entitled to raise,
> in the foreign court where the forfeiture action is pending.  It complements the
> existing provision in section 2467(e) providing that the Federal court is bound by

> the findings of fact of the foreign court, and may not look behind such findings in determining whether to enter an order enforcing a foreign forfeiture judgment.

H.R. Rep. No. 107-250, Sec. 118 at 59 (Oct. 17, 2001). Here, the Liquidators object to the Protective Order on the grounds that they own the Venus Account Funds that are subject to forfeiture in Brazil. This argument could have been raised in the Brazilian court "where the forfeiture action is pending," and thus the Liquidators are barred from asserting that argument here.

The Liquidators argue that they could not assert their ownership claims in the Brazilian court because they did not have standing to intervene in the Brazilian forfeiture action. Liquidators' Mem. at 21. The Liquidators, however, have not submitted an affidavit or provided any evidence to support their assertion that they were barred from participating in the Brazilian forfeiture action. See id.; see also Liquidators' Reply Mem. at 6. Because the Court has no evidence or legal authority before it showing that the Liquidators were barred from participating in the Brazilian proceeding, it concludes that the Liquidators are barred from objecting to the Protective Order on the same ground that would be the subject of their position in the Brazilian forfeiture action. See 28 U.S.C. § 2467(d)(3)(C); H.R. Rep. No. 107-250, Sec. 118 at 59.

## D.      Request for a Post-Restraint Hearing

The Liquidators argue that they are entitled to a hearing on their motion under 18 U.S.C. § 983(j)(3). Liquidators' Mot. at 4 (asserting that, under § 983(j)(3), "when a hearing is requested regarding the dissolution of an ex parte restraining order that was entered without notice or opportunity for hearing, a hearing 'shall be held at the earliest possible time and prior to the expiration of the temporary order'"). The Liquidators have misconstrued the requirements of § 983(j), which provides:

(1) Upon application of the United States, the court may enter a restraining order or injunction . . . or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture—

\*\*\*

    (B) prior to the filing of such a complaint, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

        (i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

        (ii) the need to preserve the availability of the property . . . outweighs the hardship on any party against whom the order is to be entered.

\*\*\*

(3) A temporary restraining order under [§ 983(j)] may be entered upon application of the United States without notice or opportunity for a hearing when a complaint has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought is subject to civil forfeiture and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than 14 days after the date on which it is entered . . . . A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time and prior to the expiration of the temporary order.

18 U.S.C.A. § 983(j)(1) (2012) (emphasis added). Section 983(j)'s hearing requirement governs pre-restraint hearings and is applicable "only when the Government seeks a restraining order before the institution of a foreign criminal or forfeiture proceeding." In re Seizure of Approximately $12,116,153.16, 903 F. Supp. 2d at 31–32 (emphasis added); see also In re Restraint of All Assets Contained or Formerly Contained in Certain Inv. Accounts at UBS Fin. Servs., Inc., 860 F. Supp. 2d 32, 39 (D.D.C. 2012) (providing that the hearing required under § 983(j) "only applies at the prefiling stage of foreign criminal or forfeiture proceedings"

(emphasis added)).  Further, "[i]n a § 2467 [p]roceeding, Congress has directed that 'references in such [§] 983(j) to civil forfeiture or the filing of a complaint shall be deemed to refer to the applicable foreign criminal or forfeiture proceedings.'"  In re Seizure of Approximately $12,116,153.16, 903 F. Supp. 2d at 31 (citing 28 U.S.C. § 2467(d)(3)(A)(ii)(II)(aa)).  Here, the Brazilian government instituted criminal proceedings against the individuals who were involved in the illegal and fraudulent activities leading to the seizure of the restrained funds nearly ten years before the United States filed their Protective Order Application with the Court.  Compare Protective Order App. at 2, Ex. D ("2005 Restraining Order") (stating that "a criminal complaint against [the defendants] was obtained on January 24, 2005") with Protective Order App. (filed on November 3, 2014).  Because Brazil initiated its forfeiture proceeding before the United States sought the Protective Order in this case, the Court is not obligated to hold a pre-restraint hearing under § 983(j).

Lastly, the Liquidators argue that notwithstanding § 983(j), they have a constitutional right to a post-restraint hearing.  See Liquidators' Mot. at 4 ("[The Liquidators are] entitled to a hearing under the due process clause of the Fifth Amendment . . . .").  Citing In re Seizure of Approximately $12,116,153.16, the Liquidators insist that a hearing will protect them from a "high risk of erroneous deprivation."  Liquidators' Mem. at 22.

The Due Process Clause of the Fifth Amendment provides that no person "shall be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.  In determining whether due process requires a hearing, a court must examine the following factors set forth in Mathews v. Eldridge: "(1) the private interest that will be affected by the restraint; (2) the risk of an erroneous deprivation of such interest through the procedures used; (3) the probable value, if any, of additional or substitute procedural safeguards; and (4) the

Government's interest, including the burdens that the hearing would entail." 424 U.S. 319, 335 (1976); see also In re Seizure of Approximately $12,116,153.16, 903 F. Supp. 2d at 32 (applying the Mathews factors in determining whether intervenors had a due process right to a pre-restraint hearing in a § 2467 action). Applying Mathews, the Court acknowledges that the Liquidators are unable to adjudicate their interests in the Venus Account Funds in the parallel interpleader action during the pendency of the Brazilian criminal proceedings. The Court, however, cannot conclude that the Protective Order creates a "high risk of erroneous deprivation" because, in any event, the stay in the interpleader action will eventually be lifted. Although another member of this Court found in In re Seizure of Approximately $12,116,153.16 that the long period of time the funds had been seized served as a basis for a post-restraint hearing, in that case, the hearing served as the primary means for the interveners to exercise their due process right and assert their interest in the seized funds. See 903 F. Supp. 2d at 33 (the interveners were denied a pre-restraint hearing and no parallel action existed in which the interveners could assert their interest in the seized funds). In this case, not only does the parallel interpleader action provide the Liquidators "an opportunity to be heard," but a post-restraint hearing would serve no purpose where there is a statutory bar preventing the Liquidators from objecting to the Protective Order. See § 2467(d)(3)(C) ("No person may object to a restraining order . . . on any ground that is the subject of parallel litigation involving the same property that is pending in foreign court."). The Court thus concludes that the Liquidators' interests are adequately protected under the Fifth Amendment without a post-restraint hearing.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants the Liquidators' motion to intervene, but denies their motion to dissolve the Protective Order, as well as their request for a hearing.

**SO ORDERED** this 8th day of November, 2016.[7]

REGGIE B. WALTON
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.