## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

————————————————————————————
                                                  )
IN RE: $6,871,042.36, AND ACCRUED                 )
INTEREST, IN FUNDS FORMERLY HELD IN               )
ACCOUNT NUMBER ******07, AT MTB                    )
BANK IN NEW JERSEY, CURRENTLY ON                  )
DEPOSIT IN AN ACCOUNT CONTROLLED                  )
BY THE UNITED STATES DISTRICT COURT               )        Misc. Action No. 14-1222 (RBW)
FOR THE DISTRICT OF COLUMBIA                      )
                                                  )
————————————————————————————

### <u>MEMORANDUM OPINION</u>

This case concerns approximately $6.8 million formerly held in account number

******07, at MTB Bank in New Jersey (the "Venus Account Funds") that are the subject of a

forfeiture judgment obtained by the Federative Republic of Brazil (the "Brazilian Forfeiture

Judgment"), as part of the criminal prosecution of Antonio Pires de Almeida ("Pires") and other

individuals "engaged in an illegal currency remitting business in São Paulo[.]"  United States'

Application to Enforce a Foreign Forfeiture Judgment Pursuant to 28 U.S.C. § 2467(c)(1) and

(d)(1) Against $6,871,042.36 and Accrued Interest Once Contained in Account Number

******07, at MTB Bank in New Jersey and Statement of Points and Authorities in Support

Thereof ("Gov't Appl." or "the government's application") at 3; see id. at 2–4; see also United

States' Ex Parte Application to Enforce and Register a Foreign Restraining Order Pursuant to 28

U.S.C. § 2467(d)(3) and Statement of Points and Authorities in Support Thereof ("Gov't

Restraining Order Appl."), Exhibit ("Ex.") 3 (J.F.6 Criminal Da Seção Judiciária de São Paulo,

Processo No. 2005.61.81.008956-6, Relator: Antônio Pires de Almeida e Outros, 17.02.2012,

Sentença No. 00035/2012).

On September 26, 2018, the United States (the "government") filed an application to

enforce the Brazilian Forfeiture Judgment pursuant to 28 U.S.C. § 2467.  See Gov't Appl. at 1.

Specifically, the government requests that the Court (1) "enter a judgment forfeiting the [Venus Account Funds] . . . to the United States[;]" (2) order it "to give notice of this application [pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions] to persons known to the [government] as having a protected property interest in the Venus Account[ Funds;]" and (3) "continue the [Court's] previously[ ]entered restraint against the [Venus Account Funds.]" Id. at 2.  Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant in part and deny in part the government's application.

## I.   BACKGROUND

The exhaustive history of this case, as well as the history of the related interpleader action that was filed to determine the respective rights of various claimants to the Venus Account Funds, see United States v. Barry Fischer L. Firm, Civ. Action No. 15-116, and another related action seeking a declaratory judgment concerning those same assets, see Almeida v. Fu, Civ. Action No. 15-117, is set forth in In re $6,871,042.36, and Accrued Interest, in Funds Formerly Held in Account Number *******07, at MTB Bank in New Jersey, Currently on Deposit in an Account Controlled by the United States District Court for the Southern District of New York,

---

[1] In addition to the government's application, the Court considered the following submissions presented to the Court in this action in rendering its decision: (1) the Government's Status Report (Mar. 20, 2017), ECF No. 11; (2) the Government's Status Report (Sept. 20, 2017), ECF No. 12; (3) the United States' Status Report (Mar. 16, 2018), ECF No. 15; (4) the Government's Status Report (Sept. 17, 2018), ECF No. 17; (5) the Liquidators' Response to Court Order [Dkt. 19], ECF No. 20; (6) the United States' Opposition to Motion to Stay Filed by Kesten Development Corporation, ECF No. 22; (7) the United States' Status Update Concerning a February 19, 2019 Brazilian Order, ECF No. 23, and (8) the United States' Status Update Concerning a February 19, 2019 Brazilian Order, ECF No. 23, Ex. 1 (Brazilian Court Order).  From the related interpleader action, United States v. Barry Fischer L. Firm, Civ. Action No. 15-116, the Court considered: (9) the Response of Kesten & Almeida to Court Order [ECF No. 50] and [a] Request for Stay, ECF No. 200; (10) an Errata, ECF No. 202; and (11) the Supplemental Response of Kesten & Almeida to Court Order [ECF Nos. 192 & 50] and [a second] Request for Stay, ECF No. 203.  Finally, from the related declaratory judgment action, Almeida v. Fu, Civ. Action No. 15-117, the Court considered: (12) the Response of Kesten & Almeida to Court Order [ECF No. 50] and [a third] Request for Stay, ECF No. 54; (13) a second Errata, ECF No. 56; and (14) the Supplemental Response of Kesten & Almeida to Court Order [ECF Nos. 192 & 50] and [a fourth] Request for Stay, ECF No. 57.

217 F. Supp. 3d 84, 87–90 (D.D.C. Nov. 8, 2016) (Walton, J.) and United States v. Federative Republic of Brazil, 748 F.3d 86, 88–91 (2d Cir. 2014), and the Court will not reiterate it here. However, the Court will set forth the facts relevant to resolving the government's application.

On November 8, 2016, the Court granted a motion to intervene in this action by Eleanor Fisher and Tammy Fu, the liquidators of the Trade and Commerce Bank ("the liquidators"), see In re $6,871,042.36, 217 F. Supp. 3d at 100, who had obtained a default judgment in the British Virgin Islands against Kesten Development Corporation, the "named owner of the MTD bank account that previously held the Venus Account Funds[.]" Id. at 87–88. Although the Court allowed the liquidators to intervene, it denied their motion to dissolve its protective order restraining the Venus Account Funds, see id. at 100, which the Court had issued on December 18, 2014, see Protective Order (Dec. 18, 2014), ECF No. 2. Following the liquidators' intervention, from March 20, 2017, to March 16, 2018, the government filed periodic status reports, in which it represented that appeals in Brazil regarding "the criminal convictions . . . that are the basis for the Brazilian [F]orfeiture [J]udgment and . . . Brazil's ownership interests in the [Venus Account Funds]" were pending resolution. See Status Report at 4 (Mar. 20, 2017), ECF No. 11; see also Status Report at 1–4 (Sept. 20, 2017), ECF No. 12; Status Report at 1–4 (Mar. 16, 2018), ECF No. 15. In these status reports, the government therefore requested that the interpleader and declaratory judgment actions remain stayed, see Order at 2 (Feb. 18, 2015), De Almeida, Civ. Action No. 15-117, ECF No. 42; Order at 2 (Feb. 18, 2015), Barry Fischer L. Firm, Civ. Action No. 15-116, ECF No. 167, pending the outcome of the litigation in Brazil and also in this action. See Status Report at 4 (Mar. 20, 2017), ECF No. 11.

On September 17, 2018, the government filed another status report in which it represented to the Court that the appeals in Brazil were complete, thereby rendering the Brazilian

Forfeiture Judgment final.  See Status Report at 2 (Sept. 17, 2018), ECF No. 17.  The

government further represented that, on August 21, 2018, Brazil had submitted a formal request

to the United States pursuant to 28 U.S.C. § 2467 for the forfeiture of the Venus Account Funds

and, thereafter, the United States had "submitted the Brazilian . . . [F]orfeiture [J]udgment for

certification [pursuant to § 2467(c)] to the Attorney General[.]"  Id. at 3.  On September 26,

2018, after Brazil's request to the United States was certified by the Attorney General's

designee, the Assistant Attorney General for the Criminal Division of the United States

Department of Justice, the government filed its application, seeking, inter alia, "a judgment

forfeiting the [Venus Account Funds.]"  Gov't Appl. at 2.

　　　　After the liquidators failed to oppose the government's application, the Court ordered the

liquidators to "show cause to the court as to why the [C]ourt should not grant the [government's

application] and enter a judgment forfeiting the funds formerly in the Venus Account to the

United States to be paid to Brazil according to the Brazilian Forfeiture Judgment."  Order at 1

(Oct. 15, 2018), ECF No. 19.  Subsequently, on November 15, 2019, the Court ordered the

defendants in the interpleader action—Barry Fischer Law Firm, LLC; Kesten Development

Corporation; and Turist-Cambio Viagens E Turismo LTDA—and the plaintiffs in the declaratory

action—Ileana Oak Pires De Almeida ("Almeida"), individually and as agent for the heirs of

Pires and for Kesten Development Corporation—to show cause as to why it should not grant the

government's application.  See Order at 4 (Nov. 15, 2018), Barry Fischer L. Firm, Civ. Action

No. 15-116, ECF No. 192; Order at 4 (Nov. 15, 2018), Almeida, Civ. Action No. 15-117, ECF

No. 50 (together with Order (Oct. 15, 2018), ECF No. 19, "show cause orders").

　　　　On October 29, 2018, the liquidators filed their response to the Court's October 15, 2018

Order.  See Liquidators' Response to Court Order [Dkt. 19] ("Liquidators' Resp."), ECF No. 20.

The liquidators represented that they "do not oppose the [government's] application to enforce the Brazilian Forfeiture Judgment . . . [,] except to the extent that the [government's] request to provide notice pursuant to Rule G of the Supplemental Rules of Admiralty for Maritime Claims purports to supersede, moot, or otherwise prejudice resolution of [Trade and Commerce Bank's] interest in the funds in the context of the [ ] interpleader action[.]"  Id. at 1–2.

On December 21, 2018, defendant Kesten in the interpleader action and plaintiff Almeida in the declaratory action, as parties with the same representation and interest, filed identical joint responses to the show cause orders and motions for a stay in the interpleader and declaratory actions, arguing that "[t]his Court should not grant the [government's] application because the Brazilian Court presiding over the forfeiture proceedings has requested that this Court refrain from taking any further action at this time[.]"  Response of Kesten & Almeida to Court Order [ECF No. 50] and Request for Stay at 2, De Almeida, Civ. Action No. 15-117 (D.D.C. Dec. 21, 2018), ECF No. 54; see also Response of Kesten & Almeida to Court Order [ECF No. 50] and Request for Stay, Barry Fischer L. Firm, Civ. Action No. 15-116, ECF No. 200 (collectively, "Kesten & Almeida Resps.").  On January 9, 2019, the Court ordered the government to "file a statement [addressing] whether this matter should be stayed pending the Brazilian Court's adjudication of Almeida's pending application to vacate the Brazilian Forfeiture Judgment."  Order at 2 (Jan. 9, 2019), ECF No. 21.  On January 25, 2019, the government responded to the Court's January 9, 2019 Order, representing that "[i]n [a] recent January 16, 2019 order, the Brazilian court rejected Kesten's and Almeida's arguments, confirming that the funds previously contained in the Venus Account . . . are the 'product of crime' under the Brazilian Penal Code" and "ordered repatriation of the funds . . . back to Brazil, requesting the Brazilian Central Authority, DRCI, to notify the United States of its decision and mandate."  United States'

Opposition to Motion to Stay Filed by Kersten Development Corporation at 3, ECF No. 22.  On

February 11, 2019, Kesten and Almeida supplemented their motion for a stay, further

"appris[ing] the Court of recent developments in the parallel Brazilian forfeiture proceedings[,]

which[,]" they argued, "bear directly on the matters pending for decision before this Court."

Supplemental Response of Kesten & Almeida to Court Order [ECF Nos. 192 & 50] and Request

for Stay at 2, De Almeida, Civ. Action No. 15-117, ECF No. 57; see also Supplemental

Response of Kesten & Almeida to Court Order [ECF Nos. 192 & 50] and Request for Stay,

Barry Fischer L. Firm, Civ. Action No. 15-116, ECF No. 203 (collectively, "Kesten & Almeida

Supp'l Resps.").  Finally, on February 25, 2019, the government filed a status report advising the

Court about a new decision from the Sixth Specialized Federal Court for Crimes against National

Financial System and Money Laundering "maintain[ing] its prior opinion" in the Brazilian

Forfeiture Judgment that the Venus Account Funds are the "product of criminal activity" under

the Brazilian Penal Code and should be repatriated back to Brazil, thereby "rejecting [ ]

Kesten['s] and Almeida's arguments."  United States' Update Concerning a February 19, 2019

Brazilian Order at 2, ECF No. 23; id., Ex. 1 (Brazilian Court Order) at 7–10.  In light of the Sixth

Specialized Federal Court's affirmance of the Brazilian Forfeiture Judgment, see id.; id., Ex. 1

(Brazilian Court Order) at 10, the failure of any party to advise the Court as to ongoing

proceedings in Brazil since the government's February 25, 2019 status report, and the Attorney

General's certification of Brazil's request to enforce the Brazilian Forfeiture Judgment, see

Gov't Appl., Ex. 1-A (Assistant Attorney General Decision) at 2, the Court will now address the

government's application.[2]

---

[2] The Court will issue its rulings regarding Almeida's and Kesten's motions for a stay in Almeida, Civ. Action No. 15-117, and Barry Fischer L. Firm, Civ. Action No. 15-116, in those actions.

## II.    STANDARD OF REVIEW

28 U.S.C. § 2467 establishes the process by which a foreign forfeiture judgment may be enforced.  Id.  First, "a foreign nation seeking to have a forfeiture [ ] judgment . . . enforced by a district court . . . shall [ ] submit a request to the Attorney General or [his or her] designee."  Id. § 2467(b)(1).  Thereafter, "the Attorney General [or his or her designee] shall determine whether . . . to certify the request."  Id. § 2467(b)(2).  In making this determination, the Attorney General is required to consider, inter alia, (1) "a summary of the facts of the case and a description of the proceedings that resulted in the forfeiture or confiscation judgment;" (2) a "certified copy of the forfeiture or confiscation judgment;" and (3) "an affidavit or sworn declaration establishing that the foreign nation took steps, in accordance with the principles of due process, to give notice of the proceedings to all persons in sufficient time to enable such persons to defend against the charges and that the judgment rendered is in force and is not subject to appeal[.]"  Id. § 2647(b)(1)(A)–(D).[3]

The Attorney General's decision regarding whether to certify a request made by a foreign nation "shall be final and not subject to . . . judicial review[,]" id. § 2467(b)(2), and, pursuant to § 2467(d)(1), a court "shall enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation unless the court finds that" certain jurisdictional, procedural, or substantive defects are present, id. § 2467(d)(1).  Specifically, a court may not enter orders to enforce the judgment on behalf of the foreign nation if (A) "the judgment was rendered under a system that provides tribunals or procedures incompatible with the requirements of due process

---

[3] Despite diligently searching, the Court has been unable to locate any cases in the District of Columbia Circuit—or, for that matter, in any court—that have adopted a standard of review for assessing when to enforce a foreign judgment pursuant to 28 U.S.C. § 2467(b)(1) and (d)(1).  However, the statutory language provides plain and unambiguous guidelines sufficient to properly assess whether this Court may enforce the Brazilian Forfeiture Judgment pursuant to § 2467.  Therefore, the Court will use the statutory language to guide its analysis.

of law;" (B) "the foreign court lacked personal jurisdiction over the defendant;" (C) "the foreign court lacked jurisdiction over the subject matter;" (D) "the foreign nation did not take steps, in accordance with the principles of due process, to give notice of the proceedings to a person with an interest in the property of the proceedings in sufficient time to enable him or her to defend" that interest; or (E) "the judgment was obtained by fraud." Id. § 2467(d)(1)(A)–(E).

### III.   ANALYSIS

As noted earlier, in the government's application, it requests: (1) that the Court enter a judgment forfeiting the Venus Account Funds to the United States; (2) that the Court's order include a provision to give notice, pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims (the "Supplemental Rules"), to all persons known to the United States as having a protected property interest in the Venus Account Funds; and (3) that the Court maintain its previously-entered protective order against the contents of the Venus Account Funds to preserve the property until the entry of the forfeiture judgment. Gov't Appl. at 2. The Court will address each of the government's requests in turn.

**A.     Enforcement of the Brazilian Forfeiture Judgment**

The government first requests that "th[e] Court enforce the Brazilian Forfeiture Judgment, consistent with 28 U.S.C. § 2467[,]" so that it may repatriate the funds to Brazil. See id. at 15; 28 U.S.C. § 2467(c)(1) (stating that "the United States may file an application on behalf of a foreign nation in [a] district court of the United States seeking to enforce [a] foreign forfeiture or confiscation judgment as if the judgment had been entered by a court in the United States"). Neither the liquidators nor Almeida and Kesten present any argument on the merits that the Court should not grant the government's application as to this request. See Liquidators' Resp. at 1–2 (representing that the liquidators "do not oppose the [government's] application to

enforce the Brazilian Forfeiture Judgment[,]" except in regards to the government's request to provide notice pursuant to Rule G); Kesten & Almeida Resps. at 4–5 (arguing only that the Court should stay the proceedings pending the outcome of litigation in Brazil); Kesten & Almeida Supp'l Resps. at 2–3 (same).

As discussed above, pursuant to § 2467, "a foreign nation seeking to have a forfeiture [ ] judgment . . . enforced by a district court . . . shall [ ] submit a request to the Attorney General or [his or her] designee[,]" id. § 2467(b)(1), and thereafter, "the Attorney General [or his or her designee] shall determine whether . . . to certify the request[,]" id. § 2467(b)(2).  Here, the record reflects that Brazil made a request to the Attorney General regarding enforcement of the Brazilian Forfeiture Judgment and that, after the Attorney General[4] reviewed Brazil's request, the Attorney General elected to "certify [Brazil's] request . . . [to] enforce[ the Brazilian Forfeiture Judgment] issued by the Brazilian Federal Court . . . to forfeit [the Venus Account Funds]."[5]  Gov't Appl., Ex. 1-A (Assistant Attorney General Decision) at 2.  Therefore, because the Attorney General certified Brazil's request, the Court must enforce the Brazilian Forfeiture Judgment, see 28 U.S.C. § 2467(b)(2) (noting that the Attorney General's decision regarding whether to certify a request made by a foreign nation "shall be final and not subject to . . . judicial review"), unless one of the five enumerated proscriptions in § 2467(d)(1) exists, see id. § 2467(d)(1) (precluding a court from "enter[ing] such as orders as may be necessary to enforce the judgment on behalf of the foreign nation" if any of the five enumerated defects exist).

---

[4] The record reflects that the Attorney General delegated his or her authority to the Assistant Attorney General for the Criminal Division, Brian A. Benczkowski.  See Gov't Appl., Ex. 1-A (Assistant Attorney General Decision) at 2.

[5] Because the Attorney General's certification is not subject to judicial review, the Attorney General's decision is not before the Court.

Based on the documentation submitted with the government's application, the Court finds that none of § 2467(d)(1)'s limitations are present.  First, the Brazilian Forfeiture Judgment was rendered in accordance with the Brazilian Constitution, which "provides that 'no one shall be deprived of freedom or of his assets without due process[.]'"  Gov't Appl., Ex. 2 (Dos Santos Affidavit) ¶ 5; see id. at 12; see also id., Ex. 2 ¶¶ 4–5 (describing the process afforded to Pires and his associates).  Second, the Sixth Federal Court of São Paulo, the Superior Court of Justice, and the Federal Supreme Court—the judicial bodies involved in issuing and affirming the Brazilian Forfeiture Judgment—all had personal, as well as subject matter, jurisdiction over Pires and his associates.  See id., Ex. 2 (Dos Santos Affidavit) at ¶¶ 5(j) (attesting that "the judging bodies [in this case] have jurisdiction to judge Pires [and his associates] (personal jurisdiction) and to sentence them criminal[ly] (subjective jurisdiction)"); see also id. at 13 (representing that "[t]he Dos Santos Affidavit [ ] establishes that the court involved in this trial had both personal jurisdiction and subject matter jurisdiction with respect to the Brazilian criminal and confiscation proceedings" (internal quotation marks and alteration omitted)).  Third, all interested parties in the Venus Account Funds have had notice of the Brazilian forfeiture proceedings with sufficient time to preserve a claim in Brazil in accordance with the principles of due process because, under Brazilian law, "all [third party] claimants [interested in seized property are afforded] an opportunity to be heard and to have their claim adjudicated."  Id., Ex. 2 (Dos Santos Affidavit) at ¶ 9; see also id., Ex. 2 (Dos Santos Affidavit) at ¶ 10 (attesting that "[s]ince at least August 2010 and continuing until today, the [liquidators] have had notice of the Brazilian proceedings, including the Brazilian seizure and forfeiture orders," but "have not availed themselves of the opportunity to assert a claim in that forum"); id. at 13 (representing that "American parties disputing [B]razil's superior claim to the property could have filed a motion as third parties

before the Federal Court in Sao Paulo").  "Finally, there is no indication that the [Brazilian Forfeiture Judgment] was obtained by fraud."  Id. at 13.  See generally id., Ex. 2 (Dos Santos Affidavit).

 The Court's findings are further supported by the absence of contrary argument presented by any interested party.  When provided the opportunity to raise any concerns that would preclude the Court from granting the government's application based on the Attorney General's certification, see generally show cause orders, the Court only received timely responses from three interested parties: the liquidators, Kesten, and Almeida.  See generally Liquidators' Response; Kesten & Almeida Resps.; Kesten & Almeida Suppl. Resps.  And in those responses, no party raised any concerns that could preclude the Court from granting the government's application and entering a judgment forfeiting the Venus Account Funds to the United States.[6]

For all of the foregoing reasons, the Court concludes that every requirement in § 2467 has been satisfied, and the Court must therefore enforce the Brazilian Forfeiture Judgment for the Venus Account Funds.  See, e.g., In re Any & All Funds or Other Assets in Brown Bros. Harriman & Co. Account #£8870792 in the Name of Tiger Eye Investments Ltd., 613 F.3d 1122, 1126 (D.C. Cir. 2010) ("[28 U.S.C. § 2467] allows the [ ] [g]overnment to forfeit assets based on the existence of a foreign court judgment; no longer does the [ ] [g]overnment need to institute independent forfeiture proceedings based on violations of U.S. law in order to seize such property.").

---

[6] As discussed above, in the liquidators' response to the Court's show cause order, the liquidators "d[id] not oppose the [government's] application to enforce the Brazilian Forfeiture Judgment."  Liquidators' Response at 2, ECF No. 20.  In Kesten's and Almeida's responses and supplemental responses to the Court's show cause order, the parties did not raise any concerns, but rather only requested that the Court stay the government's application to enforce the Brazilian Forfeiture Judgment.  See Kesten & Almeida Resps.; Kesten & Almeida Suppl. Resps.

B.      **The Applicability of Rule G**

Second, the government requests that the Court "impose upon [it] the same notice requirements as are provided in [Rule G of the Supplemental Rules for Admiralty or Maritime Claims], which was designed for use in [United States] civil forfeiture actions." Gov't Appl. at 14. For the reasons set forth below, the Court denies the government's request.

As the government correctly notes, § 2467 does not require the government to comply with Rule G, see id. at 14 (noting that "[§] 2467 does not provide a set process for the [government] to provide notice of the instant [ ] enforcement application to parties who may have an interest in the property sought for forfeiture"), as Rule G "governs [ ] forfeiture action[s] in rem arising from [ ] federal statute[s,]" Fed. R. Civ. P. Supp. R. G., and "is designed to include distinctive procedures that govern a civil forfeiture action[,]" id. advisory committee's note to 2006 adoption subdivision (1). Matters subject to § 2467, including this case, are not such cases—§ 2467 exclusively governs the enforcement of foreign forfeitures in which the government seeks the forfeiture of property on behalf of a foreign nation to repatriate that property to that foreign nation, not for the government's efforts to enforce its own forfeiture actions. See 28 U.S.C. § 2467.

Because § 2467 itself does not apply Rule G, the government relies upon § 2467(d)(1), which mandates that "a district court shall enter such orders as may be necessary to enforce the judgment on behalf of the foreign nation[,]" id. § 2467(d)(1), as the basis for its request. See Gov't Appl. at 14. However, the government provides no argument as to why application of Rule G "may be necessary to enforce the [Brazilian Forfeiture J]udgment[.]" 28 U.S.C. § 2467(d)(1). See Gov't Appl. at 14–15. Moreover, § 2467 has its own provisions to ensure adequate notice. First, it requires the foreign nation to submit, as part of its request to the

Attorney General, "an affidavit or sworn declaration establishing that the foreign nation took steps, in accordance with the principles of due process, to give notice of the proceedings to all persons with an interest in [the Venus Account Funds] in sufficient time to enable such persons to defend against the charges[.]"  28 U.S.C. § 2467(b)(1)(C).  Second, it precludes a court from enforcing the foreign judgment if "the foreign nation did not take steps, in accordance with the principles of due process, to give notice of the proceedings to a person with an interest in the property . . . in sufficient time to enable him or her to defend" that interest.  Id. § 2467(d)(1)(D). In light of (1) the Attorney General's review and certification and (2) the lack of any evidence that Brazil failed to give adequate notice in accordance with § 2467(d)(1)(D), the Court finds that any due process concerns underlying the government's request that "[this] Court impose upon [it] the same notice requirements as are provided in [the Supplemental Rules,]" Gov't Appl. at 14, have already been addressed by compliance with § 2467.

Based on the above, the Court is not convinced that ordering the government to provide notice pursuant to Rule G is "necessary to enforce the judgment on behalf of the foreign nation[.]"  28 U.S.C. § 2467(d)(1).[7]  Therefore, the Court will deny the government's request that "the [C]ourt impose upon the [government] the same notice requirements as are provided in [ ] Rule G."  Gov't Appl. at 14.[8]

_____

[7] In their response to the Court's show cause orders, the liquidators objected to the government's application "to the extent that the [government's] request to provide notice pursuant to Rule G . . . purports to supersede, moot, or otherwise prejudice resolution of [Trade and Commerce Bank's] interest in the funds in the context of the parallel interpleader action[.]"  Liquidators' Resp. at 1–2.  Because the Court is denying the government's request to order compliance with Rule G, the Court need not address the liquidators' argument that application of Rule G would "supersede, moot, or otherwise prejudice resolution of [Trade and Commerce Bank's] interest in the [Venus Account F]unds[.]"  Id. at 2.

[8] The Court acknowledges that, in a similar case, a different member of this Court recently granted, without analysis, the government's unopposed motion seeking an order directing it to comply with Rule G.  See Order at 2–3, In re Restraint of All Assets Contained or Formerly Contained in Investment Account Numbers at UBS Financial Servs., Inc., Held in the Names of Ponsford Overseas Ltd., Caribbean Investment Grp., Ltd. (D.D.C. Feb. 9, 2021), ECF No. 27.  Here, however, particularly in light of the liquidators' opposition to the government's request regarding

(continued . . .)

### C.        Continuance of the Court's Protective Order

Finally, the government requests that the "Court continue [its] previously[ ]entered restrain[ing order]" against the Venus Account Funds "to preserve the property prior to [this Court's] entry of the [Brazilian Forfeiture Judgment]." Id. at 2.  The Court agrees with the government that the restraining order should remain in effect until the Court has ordered the Venus Account Funds forfeited to the government for immediate repatriation back to Brazil.[9] Therefore, the Court will grant the government's motion to the extent that it asks the Court to "continue [its] previously[ ]entered restrain[ing order]" against the Venus Account Funds, and the Court's protective order will remain in effect pending the issuance of a final forfeiture judgment in this case.[10]

## IV.        CONCLUSION

For the foregoing reasons, the Court grants the government's application to the extent that it seeks an order (1) holding enforceable the Brazilian Forfeiture Judgment and (2) maintaining the Court's previously entered protective order against the Venus Account Funds.

---

(. . . continued)

Rule G, see Liquidators' Resp. at 1–2, the Court concludes that the government has not made a sufficient showing in this case that such an order is "necessary[.]"  28 U.S.C. § 2467(d)(1).

[9] Although the Court is granting the government's application to the extent that it seeks to hold enforceable the Brazilian Forfeiture Judgment pursuant to § 2467(d)(1), see Gov't Appl. at 8–13, the government has not yet sought—and the Court has not yet entered—a "final forfeiture judgment against the Venus [A]ccount [Funds.]" Id. at 15.  The government's application does not appear to seek such relief, possibly because it asks the Court to first order it to provide notice pursuant to Rule G.  See id. at 15 (stating that the government "will request that this Court enter a proposed final forfeiture judgment against the" funds (emphasis added); see also id., Ex. 3 (Proposed Order) at 1–2 (proposing an order that would direct the government to provide notice and would order the protective order to remain in effect, but that would not itself amount to an order of the forfeiture of the Venus Account Funds).

[10] In their response to the Court's show cause orders, the liquidators "renew their previous requests to lift the restraining order in this case following entry of the § 2467 enforcement order[,] so that the parties can proceed with litigating the interpleader action."  Liquidators' Resp. at 3.  As discussed above, the Court concludes that its protective order should remain in effect pending the entry of a final forfeiture judgment in this case.  Therefore, the Court will hold the liquidators' request in abeyance pending the government's future filing of a request for a final forfeiture judgment against the Venus Account Funds.

However, the Court denies the government's request that the Court require the government to give notice pursuant to Rule G of the Supplemental Rules.

      **SO ORDERED** this 31st day of March, 2021.[11]

REGGIE B. WALTON
United States District Judge

---

[11] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.